IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNI NADAN, et al., | CASE NO. CV F 11-1181 LJO SKO |
| Plaintiffs, | **ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 8.) |
| HOMESALES, INC., et al., | |
| Defendants. / | |

**INTRODUCTION**

Defendants Homesales, Inc. ("Homesales") and Chase Home Finance, LLC ("Chase Home") seek to dismiss plaintiffs Muni Nadan and Sakuntla Nadans' (collectively the "Nadans'") claims arising out of Chase Home's failure to extend a permanent loan modification for the Nadans' Modesto property ("property").[1] The Nadans fail to oppose dismissal of claims against defendants. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the August 23, 2011 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court DISMISSES the Nadans' claims against defendants.

---

[1] Chase Home is the successor by merger of defendant Chase Manhattan Mortgage Corporation ("Chase Manhattan"), the Nadans' original property lender. On May 1, 2011, Chase Home was merged into JPMorgan Chase Bank, N.A. ("Chase Bank") and ceases to exist as a separate entity. This Court will refer to Homesales, Chase Home, Chase Manhattan and Chase Bank collectively as "defendants."

1

# BACKGROUND

## Summary

The Nadans defaulted on their property loan, and Chase Home enrolled the Nadans into a trial period plan ("TPP")[2] to temporarily modify the Nadans' monthly payment while Chase Home determined the Nadans' eligibility for permanent loan modification. Chase Home did not agree to a permanent loan modification and foreclosed on the property. The Nadans pursue claims that they were entitled to permanent loan modification.

## The Nadans' Loan And Default

Chase Manhattan loaned the Nadans' $269,500 secured by a deed of trust ("DOT") recorded on September 24, 2004.[3] All beneficial interest under the DOT was transferred to Homesales pursuant to an assignment, which was recorded on August 25, 2010.

After the Nadans defaulted, a Notice of Default and Election to Sell Under Deed of Trust was recorded on April 28, 2009 to indicate the Nadans' $9,779.72 amount in arrears. A Notice of Trustee's Sale was recorded on July 31, 2009 to indicate an August 18, 2009 trustee's sale of the property. Homesales purchased the property, and a Trustee's Deed Upon Sale was recorded on August 25, 2010.

As discussed below, the Nadans pursue this action to challenge Homesales' title to the property.

## The Home Affordable Modification Program

The Nadans' TPP arose under the Home Affordable Modification Program ("HAMP"), which the U.S. Department of Treasury ("Treasury") established pursuant to the Emergency Economic Stabilization Act of 2008 ("EESA"), 12 U.S.C. §§ 5201, et seq. EESA directed Treasury to protect home values and other assets of individuals, to preserve home ownership, to maximize returns to taxpayers, and to provide public accountability. Although HAMP's purpose is to assist at-risk homeowners, HAMP does not seek to prevent all foreclosures, only "avoidable" foreclosures. *See* 12 U.S.C. §§ 5219(a)(1). HAMP offers financial incentives for borrowers, servicers and investors to enter

---

[2] The TPP includes a three-page document which is entitled "Home Affordable Modification Trial Period Plan (Step One of Two-Step Documentation Process) and signed by the Nadans. This Court will include the document in its reference to "TPP."

[3] Documents pertaining to the Nadans' loan and foreclosure proceedings were recorded with the Stanislaus County Recorder.

into loan modifications which are economically sound for all parties. *See* Supplemental Directive ("SD") 09-01 (April 6, 2009).

To accomplish HAMP goals, Treasury promulgated directives to compare the net present value ("NPV") of a HAMP modified loan to the NPV of an unmodified loan, that is, a loan that will likely proceed to foreclosure. SD 09-01 at 4-5. The directives set threshold criteria for modification, including a limit on outstanding principal and an existing payment exceeding 31 percent of the homeowner's gross income. SD 09-01 at 2. The directives set a sequence of steps, known as the "waterfall," for servicers to determine eligibility for a hypothetical loan modification to lower payment to no more than 31 percent of the borrower's gross monthly income. SD 09-01 at 8. The waterfall includes interest rate reduction, loan term extension, and principal forbearance. SD 09-01 at 9.

Defendants note that modification requests are subject to failure at the waterfall stage and that the waterfall fashions a hypothetical modified loan that the servicer may use to conduct the NPV test. "The NPV is essentially an accounting calculation to determine whether it is more profitable to modify the loan or allow the loan to go into foreclosure." *Williams v. Geithner*, 2009 U.S. Dist. LEXIS 104096, at *9, n. 3 (D. Minn. 2009). If a loan appears eligible for modification under these criteria, the loan may be placed into a TPP to establish a provisional period during which the borrowers make no less than three modified monthly payments. HAMP Base Net Present Value Model Specifications, at 2 (June 11, 2009).

Participation in HAMP is voluntary for non-government sponsored entities, including Chase Home.

Defendants note that prior to June 1, 2010, servicers were able to evaluate a TPP applicant based solely in the applicant's verbal eligibility representations. A servicer evaluated and verified permanent modification eligibility after the borrower returned the TPP application and required documentation. SD 09-01, at 6-7. HAMP guidelines mandated that for a TPP offered on verbal representations, the servicer "must" use verified documentation to confirm eligibility before permanent modification. (SD 09-01, at 5-6.

Defendants note that reliance on an applicant's initial, verbal representations as to eligibility allowed servicers to expedite the TPP process but resulted in TPPs offered to "borrowers who were

ultimately found ineligible for permanent modifications upon verification of their hardship information or after the NPV analysis." Treasury later issued a directive requiring "full verification of borrower eligibility prior to offering a trial period plan." SD 10-01, at 1. Defendants point out that the Nadans' modification request preceded the full verification of eligibility directive.

### The Nadans' Claims

The Nadans proceed on their Complaint to Set Aside Trustee's Sale; To Cancel Trustee's Deed; To Quiet Title; and Fraud ("complaint") to allege that:

1.  On September 1, 2009, Chase Home informed the Nadans that Chase Home "had approved a trial period workout plan, with payments to be $1,438.79 per month"; and
2.  The Nadans had entered into an agreement with Chase Home "to keep their home from being foreclosed" and "had been making monthly payments of $1,438.79."

The complaint alleges claims to set aside the trustee's sale and to cancel the trustee's deed as improper and invalid and to quiet title in the property in the Nadans' favor. The complaint alleges a fraud claim that defendants misrepresented that defendants and the Nadans had entered into an agreement whereby if the Nadans "paid to Defendants the monthly sum of $1,438.79 the Defendants would not foreclose on Plaintiffs' property."

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants attack the complaint's claims as premised on the Nadans' three monthly payments under the TPP, which "only prevented Chase Home from foreclosing for three months, after which time Chase was free to pursue all of its rights and remedies under the DOT." Defendants contend that the complaint's claims fail in that the trustee's sale was nine months at the trial period ended.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a

defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino*

///

1  *v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[4]  A "court may disregard allegations in the complaint
2  if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v.*
3  *Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp*.,
4  815 F.2d 1265, 1267 (9th Cir.1987)).  Moreover, "judicial notice may be taken of a fact to show that a
5  complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd*., 245
6  F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir.
7  1997).  A court properly may take judicial notice of matters of public record outside the pleadings and
8  consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649
9  (9th Cir. 1988).

10  As discussed below, the complaint's claims are subject to dismissal in that they are not supported
11  by a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.

## TPP Terms

13  The thrust of defendants' challenge to the complaint's claims is that defendants permissibly
14  foreclosed on the property under the TPP's terms.

15  The TPP required the Nadans to make $1,438.79 payments on September 1, October 1 and
16  November 1, 2009.  The TPP defines its "Trial Period" as running from September 1, 1999 to either
17  December 1, 2009 or on the TPP's "termination."  The TPP provides that it terminates and the loan will
18  not be modified if prior to December 1, 2009, Chase Home does not provide the Nadans with "a fully
19  executed copy of [the TPP] and the Modification Agreement," or Chase Home determines that the
20  Nadans' representations in section 1 of the TPP "are no longer true and correct."  The TPP further
21  provides that upon TPP termination, Chase Home "will have all of the rights and remedies provided by
22  the Loan Documents," and payments made under the TPP will be applied to amounts owed "under the
23  Loan Documents and shall not be refunded" to the Nadans.

24  The TPP suspends a scheduled foreclosure sale during the Trial Period if the Nadans make their
25  monthly payments.  However, the TPP provides that "any pending foreclosure action will not be

---

[4] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

7

dismissed and may be immediately resumed from the point at which it was suspended if this [TPP] terminates, and no new notice of default . . . or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived . . ."

Defendants note that the complaint fails to allege that prior to December 1, 2009, defendants provided the Nadans an executed TPP and Modification Agreement or concluded that the Nadans' representations in section 1 of the TPP remained true and correct. Defendants point to the complaint's limited allegation that the Nadans made required payment during the Trial Period, which defendants characterize as having "no bearing" on the TPP's termination date or ability to foreclose after the TPP's termination date. Defendants conclude that the TPP terminated no later than December 1, 2009 to reinstate foreclosure and that defendants owed no obligation to the Nadans under the TPP at the time of the August 18, 2010 trustee's sale.

Defendants are correct that after the TPP terminated, they were free to foreclose and thus violated no agreement. The Nadans offer no opposition to the effect that TPP prevented foreclosure. The complaint's claims are premised on expired TPP obligations to doom the claims.

### Lack Of Consideration

Defendants argue that lack of consideration renders the TPP unenforceable.

"California law requires four elements to form a valid contract: 1) parties capable of contracting; 2) their mutual consent; 3) a lawful object; and 4) sufficient consideration." *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F.Supp.2d 1184, 1193 (C.D. Cal. 2007). There are two requirements for consideration: "The promisee must confer (or agree to confer) a benefit or must suffer (or agree to suffer) prejudice" and "the benefit or prejudice must actually be bargained for as the exchange for the promise. Put another way, the benefit or prejudice must have induced the promisor's promise." *Steiner v. Thexton*, 48 Cal.4th 411, 420-421, 226 P.3d 359 (2010) (internal quotations and citations omitted).

Defendants argue that the Nadans' TPP payments are not consideration for permanent loan modification because the TPP payments were less than the Nadans were obligated to pay on their loan. Defendants point to the TPP by which the Nadans agreed that "all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The

8

Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents."

Defendants are correct that the complaint's claims fail as premised on an unenforceable agreement lacking sufficient consideration. The "doing or promising to do what one is already bound to do cannot be consideration for a promise." *Janda v. Madera Community Hosp.*, 16 F.Supp.2d 1181, 1187 (E.D. Cal. 1998). Moreover, the TPP payments were less that what the Nadans were obligated to pay on their loan. The TPP provides: "The Lender will hold the payments received during the Trial Period . . . until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full." "Ordinarily where one is legally bound and can be compelled to pay a definite ascertained sum of money . . . a mere promise to pay less than the entire sum in satisfaction thereof, is without consideration and void." *Blummer v. Madden*, 128 Cal.App. 22, 25, 16 P. 319 (1932). The complaint's claims are doomed with the Nadans' failure to comply with their obligations to pay full amounts owed on their loan.

**Absence Of Material Modification Terms**

Defendants contend that a purported agreement to modify the Nadans' loan in the future would be an unenforceable "agreement to agree" given the TPP's absence of "essential terms of the purported permanent modifications."

When "essential terms" are "only sketched out, with their final form to be agreed upon in the future . . ., the parties had at best an 'agreement to agree,' which is unenforceable under California law." *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 213, 45 Cal.Rptr.3d 692 (2006). "[T]here is no contract where the objective manifestations of intent demonstrate that the parties chose not to bind themselves until a subsequent agreement [was] made." *Rennick v. O.P.T.I.O.N. Care, Inc.,* 77 F.3d 309, 316 (9th Cir.1996); *see Beck v. American Health Group Internat. Inc.,* 211 Cal.App.3d 1555, 1562–1563, 260 Cal.Rptr. 237 (1989) (letter manifested intent not to be bound until formal contract was written).

Defendants note that essential loan agreement terms include interest rate, monthly payment amount, and maturity date. *See Banco Do Brasil, S. A. v. Latian, Inc.*, 234 Cal.App.3d 973, 1015, n. 55, 285 Cal.Rptr. 870 (1991); *Burgess v. Rodom*, 121 Cal.App.2d 71, 74, 262 P.2d 335 (1953) (parties "agreed to agree upon terms in the future" in absence of terms of interest and how "balance would be

9

paid, whether in monthly, quarterly, semiannual or annual installments, or at the end of a specified term of years" and how security, if any, is to be provided for balance).

Defendants fault the complaint's failure to identify "key terms fixed by any alleged contract." Defendants note that the TPP "leaves open key terms such as payment amount, interest, and term" in that the TPP provides that Chase Home "will determine the new payment amount."

Defendants are correct that the complaint fails to allege material terms of a permanent loan modification. The complaint only addresses the three TPP payments. In the absence of allegations of required loan modification terms, the complaint's claims fail.

## No Private Right Of Action Under HAMP

Defendants further attack the complaint's claims in the absence of a private right of action under HAMP. Defendants explain that the complaint's claims are premised on obligations imposed by the TPP, "an essential component of HAMP."

The "fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946 (1979). "Instead, our task is limited solely to determining whether Congress intended to create the private right of action asserted . . . . And as with any case involving the interpretation of a statute, our analysis must begin with the language of the statute itself." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479 (1979).

Defendants point out that HAMP does not provide a private cause of action against lenders for failure to consider an application for loan modification or to modify an eligible loan. A fellow district court explains the absence of a private right of action under HAMP:

> On October 8, 2008, President Bush signed into law the Emergency Economic Stabilization Act of 2008, Pub.L. No. 110-343, 122 Stat. 3765 (codified 12 U.S.C. § 5201 et seq.) ( "EESA" ). Section 109 required the Secretary of the Treasury ("the Secretary") to take certain measures in order to encourage and facilitate loan modifications. 12 U.S.C. § 5219. However, Section 109 did not create any private right of action against servicers for grievances relating to the EESA. *Ramirez v. Litton Loan Serv.*, LP, 2009 WL 1750617, *1 (D.Ariz.2009); *Barrey v. Ocwen Loan Serv., LLC*, 2009 WL 1940717, * 1 (D.Ariz.2009).
>
> . . .
>
> Per designation by the Secretary, Freddie Mac serves as compliance officer for the HAMP. U.S. Dep't of Treasury, Supplemental Directive 2009-08, at 4 (Nov. 3, 2009).

10

> The HAMP requires mortgagees to collect, retain, and transmit mortgagor and property data to Freddie Mac in order to ensure compliance with the program. *See* Supplemental Directive 2009-01, at 13-14, 19-21 (Apr. 6, 2009); Supplemental Directive 2009-06 (Sept. 11, 2009). As the compliance agent, Freddie Mac is charged with conducting "independent compliance assessments" including "evaluation of documented evidence to confirm adherence . . . to HAMP requirements" such as the evaluation of borrower eligibility. Supplemental Directive 2009-01, at 25-26.
>
> Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide for a private right of action. Rather, Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac. By delegating compliance authority to one entity, Freddie Mac, Congress intended that a private cause of action was not permitted. *See Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir.2001) (reiterating that "the doctrine of expressio unis est exclusio alterius instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.").

*Marks v. Bank of America, N.A.*, 2010 WL 2572988, at *5, 6 (D. Az. 2010).

Defendants are correct that lenders "retain the right to reject or structure modifications as appropriate to the individual circumstances of the borrower." Defendants exercised such right as to the Nadans. In the absence of a private right of action under HAMP, the Nadans lack viable claims against defendants.

**Fraud**

The complaint's fraud claim proceeds pursuant to "an agreement whereby if Plaintiffs paid to Defendants the monthly sum of $1,438.79 the Defendants would not foreclose on Plaintiffs' property." Defendants attack the fraud claim in that "the TPP on its face makes no such promise" and the complaint "lacks the requisite specificity" to support fraud.

*Elements*

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996). The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336. "The absence of any one of these required elements will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

### *Particularity Pleading Standard*

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[5] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[6] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient

---

[5] F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

[6] "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla.1998). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).

1    The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard.  The complaint
2 lacks precise allegations as to what each defendant, through specifically identified and authorized agents
3 or representatives, allegedly promised or represented. The complaint lacks facts to support fraud
4 elements let alone the who, what, when, when and how of alleged misconduct.  Defendants correctly
5 challenge the Nadans' justified reliance that defendants would not foreclose given that the TPP entitles
6 defendants to foreclose.  Defendants raise valid challenges to the absence of facts to support allegations
7 that the Nadans were induced to "forbear taking other action to keep the subject property from being
8 foreclosed."  Given the number of defendants and their differing roles, the complaint's allegations are
9 insufficient to warrant dismissal of the complaint's claims sounding in fraud.

## Quiet Title

Defendants challenge the complaint's attempt to quiet title in the property in the Nadans' favor in the absence of necessary allegations, including the Nadans' tender of amounts due on their loan.

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt.  The cloud upon his title persists until the debt is paid.").

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. An "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity would recognize." *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7 (1901).

The Nadans are unable to re-acquire good title to the foreclosed property without paying or tendering their outstanding indebtedness. With the complaint's absence of a meaningful ability or willingness to tender the indebtedness, a purported quiet title claim fails. This Court is not in a position to award the Nadans a windfall.

Moreover, California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein." California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1. A legal description and street address of the subject real property;
2. The title of plaintiff as to which determination is sought and the basis of the title;
3. The adverse claims to the title of the plaintiff against which a determination is sought;
4. The date as of which the determination is sought; and
5. A prayer for the determination of the title of the plaintiff against the adverse claims.

The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property." Cal. Code Civ. Proc., § 760.030.

The complaint lacks facts as to the title of which the Nadans seek determination and the basis of the Nadans' purported title given her inability to tender amounts due on her loans. A quiet title claim requires an allegation that the plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *See Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The complaint lacks facts that the Nadans are rightful owners of the property with satisfaction of deed of trust obligations and thus lacks a properly pled quiet title claim. Moreover, given its cumulative nature, the quiet title remedy fails with the

complaint's other claims.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against defendants;

2. DIRECTS the clerk to enter judgment in favor of defendants Homesales, Inc., Chase Home Finance, LLC, and Chase Manhattan Mortgage Corporation and against plaintiffs Muni Nadan and Sakuntla Nadan in that there is no just reason to delay to enter such judgment given that the Nadans' claims against these defendants and their alleged liability are clear and distinct from claims against and liability of any other defendant. *See* F.R.Civ.P. 54(b); and

3. ORDERS the Nadans' counsel, no later than August 19, 2011, to file papers to show cause why this Court should not dismiss this action against defendant NDEX West, LLC.

**This Court ADMONISHES the Nadans' counsel that this Court will dismiss this action against defendant NDEX West, LLC if the Nadans' counsel fails to comply with this order and fails to file timely papers to show cause why this Court should not dismiss this action against defendant NDEX West, LLC.  This Court further ADMONISHES the Nadans' counsel of potential liability under 28 U.S.C. § 1927 and other authorities.**

IT IS SO ORDERED.

Dated:   August 12, 2011                            /s/ Lawrence J. O'Neill
                                                                    UNITED STATES DISTRICT JUDGE